# U N I T E D   S T A T E S   D I S T R I C T   C O U R T
## D I S T R I C T   O F   N E W   J E R S E Y



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## <u>LETTER OPINION</u>

April 15, 2010

Gregory Meditz
89 Uhland Street, Apartment #5
East Rutherford, NJ 07073

    (*Plaintiff*)

Emilia Perez
City of Newark, Department of Law
Assistant Corporation Counsel
920 Broad Street
Newark, NJ 07102

    (*Attorney for Defendant City of Newark*)

    **RE:**   **Meditz v. City of Newark**
             **<u>Civ. No. 08-2912 (WJM)</u>**

Dear Parties:

    This matter comes before the Court on Defendant City of Newark's motion for summary judgment.  Plaintiff Gregory Meditz opposes this motion.  There was no oral argument. Fed. R. Civ. P. 78. For the reasons stated below, Defendant's motion is **GRANTED**.

## I.     BACKGROUND

Plaintiff Gregory Meditz is a white male currently residing in East Rutherford, New Jersey.  Pl.'s Third Am. Compl., ¶¶ 1, 29.  In April, 2007, he applied for the position of Housing Development Analyst with Defendant City of Newark, a New Jersey municipality.[1]  *Id*. at ¶ 6.  The job posting stated that the position was only open to Newark residents.  *Id*. at Ex. A.  The City of Newark requires that non-uniformed municipal employees of the City be bona fide residents pursuant to Newark Ordinance 2:24-1.1 ("the Ordinance").[2]  *Id*. at ¶ 18, Ex. D. In July, 2007, Plaintiff received notice that he was ineligible for the position because he failed to meet the residency requirement.  *Id*. at ¶ 10, Ex. C.

On June 12, 2008, Plaintiff commenced suit against the City of Newark in New Jersey District Court, alleging that Newark's Ordinance violates Title VII of "[t]he Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., the New Jersey Law Against Discrimination [('NJ LAD')] N.J.S.A. § 10:5-1 *et seq*., the Equal Protection Clause of the United States Constitution, and Article I, paragraph I of the New Jersey Constitution."  *Id*. at ¶ 2.  In addition, Plaintiff alleges Defendant violated New Jersey's Open Public Records Act, N.J.S.A. § 47:1A-1 *et seq*., and the common law right of access to public records, for failure to provide Plaintiff with certain record requests.[3]  *Id*.

---

[1] With of population of 273,546, Newark is New Jersey's largest city.  14.2 % of Newark's residents are white persons of non-Hispanic origin ("White").  Pl.'s Br. in Opp'n to Summ. J. Mot., Ex. D.  9.24 % of Newark's non-uniformed employees are White.  *Id*. at, Ex. H.

[2] The Ordinance does contain a provision allowing for exceptions to the bona fide residency requirement for good cause.  Pl.'s Third Am. Compl., Ex. D.  Based on Plaintiff's statistics, of the 2,054 non-uniformed City of Newark employees, 8.96% are non-residents.  Pl.'s Br. in Opp'n to Summ. J. Mot., Ex. B.

[3] On May 24, 2008, Plaintiff requested "any documents that indicate the racial, color, ethnic, age, national origin and gender make-up [sic] the City of Newark Municipal workforce" for the years 2005-2007.  Pl.'s Third Am. Compl., Ex. G.  Over one year later, Plaintiff still had not received the requested documents.  *Id*. at ¶ 74.  Despite this protracted time period, Defendant is not in violation of N.J.S.A. § 47:1A-1, which requires the requestor to identify the records sought with specificity.  *Bart v. Passaic County Pub. Hous. Agency*, 968 A.2d 187, 191 (N.J. Super. Ct. App. Div., 2009).
Evidently, Plaintiff did receive the requested documents at some point as Plaintiff has provided this Court with numerous exhibits detailing the racial make-up of Newark's workforce.  *See* Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J.  Defendant never addressed these claims in its summary judgment papers and Plaintiff has not reasserted the issue in his opposition papers.

Plaintiff seeks compensatory and punitive damages, costs of suit, imposition of a civil penalty against Defendant, and other equitable and legal relief allowed pursuant to common law or statute.  Pl.'s Third Am. Compl.  Defendant filed its motion for summary judgment on November 9, 2009.  Plaintiff filed a response opposing the motion on February 17, 2010.  Defendant filed a reply brief to Plaintiff's response on February 25, 2010.[4]

## II.    DISCUSSION

Before the Court now is Defendant City of Newark's motion for summary judgment.

### A.    Summary Judgment Standard

Summary judgment is appropriate where the moving party is able to demonstrate that there is no genuine dispute as to any material facts and that judgment is appropriate as a matter of law.  Fed. R. Civ. P. 56(c). When evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976).  For claims of discrimination under both Title VII and the NJ LAD,

---

Accordingly, Plaintiff's claims stemming from lack of access to Newark's records are dismissed moot.

[4] Plaintiff moves to strike this reply brief in its entirety because it exceeds the page limits imposed by L.Civ.R. 7.2(b).  Pl.'s Br. in Support of Mot. to Strike Def.'s Reply Br.  However, a single violation of this rule does not call for the entire brief to be stricken.  *See New Jersey Federal Practice Rules*, Comment to L.R. Civ. R. 7.2(b) (Gann Law Books, 2010).
Plaintiff further moves to strike Exhibit A of the reply brief, which is a two-page certification of Valerie Gholston-Key, Assistant Personnel Director of the City of Newark's Division of Personnel.  This certification merely clarifies the City of Newark's employment application process.  Plaintiff claims it is improper summary judgment evidence and was never provided to Plaintiff during discovery.  Pl.'s Br. in Support of Mot. to Strike Def.'s Reply Br.  The Court agrees with Defendant that the contents of the Exhibit consists of readily available public information.  Moreover, between applying for a job with Defendant initially and preparing the present lawsuit, the Court is hard-pressed to find that any of the exhibits' contents come as a revelation to Plaintiff.  This Court finds the entire brief, including Exhibit A, is admissible, and will deny Plaintiff's motion. That being said, the exhibits' contents are unnecessary to decide the present summary judgment motion, and have in no way altered this Court's decision.

Defendant's motion for summary judgment is decided by this Court using a three-step burden-shifting framework, explained *infra*.

### B.    Forms of Discrimination Prohibited Under Title VII and the NJ LAD

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e *et seq*.  Title VII prohibits both intentional discrimination (known as "disparate treatment") and certain practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as "disparate impact").  *Ricci v. DeStefano*, 129 S.Ct. 2658, 2672, 174 L.Ed.2d 490 (2009).  Both forms of discrimination are similarly prohibited under the NJ LAD. *Gerety v. Atlantic City Hilton Casino Resort*, 877 A.2d 1233, 1237 (N.J. 2005).

### C.    Plaintiff's Disparate Treatment Claims

Disparate treatment discrimination occurs when an employer treats a particular person less favorably than others because of a protected trait.  *Ricci* at 2672.  For claims of reverse disparate treatment discrimination under Title VII and NJ LAD, the Third Circuit applies a modified *McDonnell-Douglas*[5] burden shifting analysis. *Mosca v. Cole*, 217 Fed. Appx. 158, 161 (3d Cir. 2007); *Gunnings v. Borough of Woodlynne*, 2007 WL 4591290 at *6, 05-cv-5459 (D.N.J. Dec. 28, 2007) (*citing Iadimarco v. Runyon*, 190 F.3d 151, 161 (3d Cir.1999)).  Using this analysis, once Plaintiff establishes a prima facie case of disparate treatment discrimination, the burden of production, but not persuasion, shifts to the employer to produce evidence of a legitimate non-discriminatory reason for the adverse employment action. *Iadimarco* at 157. Thereafter, Plaintiff must prove by the preponderance of the evidence, that the employer's proffered reasons constituted a "pretext" for discrimination. *Id*. at 166.

For Plaintiff to make out a prima facie case of reverse disparate treatment discrimination, Plaintiff must establish that: (1) he was qualified for his position; (2) he suffered an adverse employment action; and (3) "sufficient evidence" exists to conclude that the employer treated him less favorably than others based upon a protected  trait.  *Id*. at 161. On the facts of this case, Plaintiff cannot establish a prima facie case of disparate treatment discrimination.  Plaintiff's application was rejected because he is not a Newark resident, and this was clearly listed as a requirement for the job.  Plaintiff applied for and received notice that he was not qualified for the position in the mail.  No where in the record does it indicate that Plaintiff met with any one from the City of Newark or of any other circumstances that could make Defendant aware of his race.  Plaintiff has failed to

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

4

provide the Court with sufficient evidence that Newark rejected his application based on his race, and has not set forth a prima facie claim of disparate treatment discrimination. In sum, Plaintiff can not prove that in rejecting his application, Defendant intentionally discriminated against Plaintiff based on his race. *Ricci* at 2672. Accordingly, summary judgment is appropriate as to Plaintiff's disparate treatment claims.

### D.      Plaintiff's Disparate Impact Claims

Under the disparate impact burden shifting analysis, Plaintiff has the initial burden to establish a prima facie violation by showing that Defendant uses "a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(k)(1)(A)(i). If Plaintiff does this, the burden shifts to Defendant to demonstrate that the challenged practice is "job related for the position in question and consistent with business necessity." *Id*. Even if Defendant offers a valid business justification, Plaintiff may still succeed by showing that Defendant refuses to adopt an available alternative employment practice that has less disparate impact and serves Defendant's legitimate needs.[6] *Id*. at (k)(1)(A)(ii) and (C); *Ricci* at 2673.

Under the first prong of this analysis, Plaintiff must demonstrate that application of a facially neutral standard has caused a "significantly discriminatory hiring pattern." *NAACP v. Town of Harrison*, 940 F.2d 792, 798 (3d Cir.1991). The evidence in the present case, as in  most disparate impact cases, comes in the form of statistical disparities. *Id*. When analyzing the statistical evidence, "[t]he 'proper comparison [is] between the racial composition of [the at-issue jobs] and the racial composition of the qualified . . . population in the relevant labor market.'" *NAACP v. City of Bayonne*, 134 F.3d 113, 121 (3d Cir. 1998) (citing *Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 650, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)). For Plaintiff to prove causation through statistical evidence alone, the statistics must be of a kind and degree sufficient to show that Newark's Ordinance has caused Whites to be excluded from jobs with Defendant because of their race. *NAACP v. Bayonne*, 134 F.3d 113, 121 (3d Cir. 1998); *see also McNeil v. McDonough*, 648 F.2d 178, 182 (3d Cir. 1981). In other words, Plaintiff will not make out a case of disparate impact simply by showing that, 'at the bottom line,' there is racial imbalance in Defendant's work force. *NAACP v. Bayonne* at 124 (citing *Wards Cove* at 657).

---

[6] The NJ LAD employs the same burden shifting analysis used under Title VII. *Gerety v. Atlantic City Hilton Casino Resort*, 877 A.2d 1233, 1237 (N.J. 2005).

Turning to the facts of this case, and assuming for the purposes of Defendant's motion for summary judgment that Plaintiff's statistics are correct, the numbers do not support the position that application of Defendant's facially neutral Ordinance has resulted in a significantly discriminatory hiring pattern. Standing alone, the fact that 9.24% of Newark's non-uniformed member workforce is White could suggest a racial imbalance in Defendant's workforce. However, a bottom line racial imbalance will not carry Plaintiff's prima facie claim. Moreover, even at this seemingly low percentage, Newark still employs 180 white persons in the at-issue positions. Assuming, *arguendo*, that 100% of Newark's white residents are qualified for the at-issue positions, they still constitute only 14.2% of the relevant labor market for these positions. When placing this percentage in context, it becomes clear that these statistics, standing alone, do not constitute sufficient evidence of a significantly discriminatory hiring pattern.

Plaintiff relies heavily on *NAACP v. Harrison*[7] to support the position that Newark's relevant labor market should consist of the entire population of the counties of Bergen, Essex, Hudson, Morris, Passaic and Union. Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., p. 14. Plaintiff's reliance on *Harrison* is misplaced. In that case, only .2% of the Township of Harrison's residents were Black, yet, bona fide residence remained a prerequisite for municipal employment. *Harrison* at 796. As a result, Harrison employed zero black persons. *Id.* Harrison's facially neutral standard clearly caused a significantly discriminatory hiring pattern. While conceding that Harrison was empowered to enact such an ordinance and that the ordinance would receive rational basis constitutional scrutiny, in the face of such stark employment statistics, the court defined the relevant labor market for Harrison to include the populations of Bergen, Hudson, Essex and Union counties. *Id.* at 801; *see also NAACP v. North Hudson Regional Fire & Rescue*, 255 F.R.D. 374, 390-91 (D.N.J. 2009) (*rev'd* on other grounds) (relevant labor market redrawn where only two out of 323 total employees, or less than 1% of the workforce, was Black and preference was given to candidates based on residency). The facts of Plaintiff's case do not support a similar result. This is not a situation where less than 1% of Defendant's population or total workforce is White. As previously discussed, Newark's employment statistics do not suggest its Ordinance has caused a significantly discriminatory hiring pattern for the positions in question. Moreover, Newark is New Jersey's largest city with over 270,000 residents, 38,950 of whom are White. Given its diversity and large population, there is no need to redefine the relevant labor market past city limits for purposes of Title VII analysis.

In sum, Plaintiff has failed to present a prima facie claim of disparate impact discrimination. However, assuming, *arguendo*, that Plaintiff has set out a prima facie

---

[7] 940 F.2d 792 (3d Cir. 1991)

case of disparate treatment discrimination, and the burden of production has shifted to Defendant, Newark may defend against liability by demonstrating that the Ordinance is "job related for the position in question and consistent with business necessity." *Ricci* at 2673.  To do this, Defendant must present objective evidence demonstrating a nexus between its residency ordinance and a particular employment goal.  *Harrison* at 804. Once Defendant has done this, the burden of production falls back to Plaintiff to discredit any business justification asserted (or to suggest a viable alternative to the challenged practice which would reduce the disparate impact).  *Id*. at 798.

Defendant has provided this Court with numerous business justifications for its Ordinance which include [1] promoting the economic growth and prosperity of the City by reducing high unemployment rates of inner-city minority groups and providing general economic benefits flowing from local expenditure of employees' salaries; [2] improving relationships between inner-city minority groups and city employees; [3] increasing the quality of employee performance as residents of the City tend to have greater personal knowledge of the City's conditions and a feeling of greater personal stake in the City's progress; [4] reducing absenteeism and tardiness among municipal personnel; and [5] promoting ethnic balance in the community.  Def.'s Br. in Supp. of Mot. for Summ. J., p. 37.  This Court is satisfied that Defendant has objectively demonstrated a nexus between its residency ordinance and its employment goals.  In an attempt to discredit these justifications, Plaintiff contends that Defendant must demonstrate why its residency policy is necessary for employees to perform their job functions.  Pl.'s Br. in Opp'n to Summ. J. Mot., p. 21.  Plaintiff's contention is incorrect.  Although a "mere insubstantial justification . . . will not suffice", Defendant is not required to prove challenged practice is "essential" or "indispensable" to the employer's business for it to pass muster. *Harrison*, 940 F.2d at 801.

Having already determined that Plaintiff has failed to make a prima facie disparate impact discrimination claim, and further that Defendant has successfully presented valid business justifications for its policy, summary judgment is appropriate as to Plaintiff's disparate impact claims.  Accordingly, this Court will not address the suggested alternatives to Defendant's current residency requirement under the third prong of the analysis.

### E.   <u>Plaintiff's Constitutional Claims</u>

Plaintiff also asserts that Defendant's Ordinance violates his due process and equal protection rights under the New Jersey and United States' Constitutions, respectively. Residency requirements for municipal employment have long been held to be constitutional and receive rational basis scrutiny.  *See Kennedy v. City of Newark*, 148

A.2d 473, 476 (N.J. 1959) ("If there is a rational basis for a residence requirement in furtherance of the public welfare, the constitutional issue [raised based on Art. I, par. 1 of the New Jersey Constitution] must be resolved in favor of the legislative power to ordain it."); *Trainor v. City of Newark*, 368 A.2d 381 (N.J. Super. Ct. App.Div.1976) (Newark ordinance upheld despite fourteenth amendment equal protection challenge); *Mercadante v. City of Paterson*, 266 A.2d 611 (N.J. Super. Ct. Ch.Div.1970) (reiterating that residential requirements are constitutional).

Having already concluded that Defendant's proffered business justifications for its municipal residency requirement satisfy Title VII scrutiny, it follows that they also pass constitutional scrutiny. *See Harrison* at 804 ("[w]here discrimination effected by state law or municipal ordinance will survive [a] constitutional challenge '[i]f any state of facts reasonably may be conceived to justify it,' the standard applicable to employment practices under Title VII is more demanding") (quoting *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Accordingly, summary judgment is appropriate as to Plaintiff's constitutional claims, and to the 42 U.S.C. § 1983 claims stemming from the same. *See Popow v. City of Margate*, 476 F.Supp. 1237, 1245 (D.N.J.1979) (municipal liability under § 1983 requires the existence of an official policy which results in constitutional violations or conduct by officials in authority evincing implicit approval of unconstitutional conduct); *see also Jones v. New Jersey Dept. of Corrections*, 2009 WL 3128351 at *3, 04-cv-4052 (D.N.J. Sept. 28, 2009).

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**.  An order follows this Letter Opinion.


/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

8